IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MALIK Y. MACKLIN,<br><br>                    Plaintiff,<br><br>        v.<br><br>COUNTY OF CAMDEN; CAMDEN COUNTY POLICE DEPARTMENT a/k/a METRO DIVISION; CHIEF OF POLICE JOHN SCOTT THOMSON; WILLIAM FRETT; NICHOLAS RAO; ANTHONY AMATO; JOHN DOES 1-10 (f/n of Metro Division Police Officers, individually and in official capacities) j/s/a,<br><br>                    Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>        Civil Action<br>    No. 15-7641 (JBS/AMD)<br><br>    **MEMORANDUM OPINION** |

**SIMANDLE, Chief Judge:**

In this 42 U.S.C. § 1983 action, Plaintiff Malik Y. Macklin alleges that one evening in September of 2013, three police officers from the Camden County Police Department used excessive force when they assaulted and arrested him without probable cause as he was walking down the street, causing severe bodily injuries. (Compl. [Docket Item 1.]) Less than one month after the incident, Plaintiff and his mother reported the incident to the Camden County Police Department's Internal Affairs Office, which investigated the allegations of excessive force. Approximately two years later, Plaintiff sued the three individual police officers, along with the County of Camden, the

Camden County Police Department, and the Chief of Police John
Scott Thomson [misstated as "Thomas"], bringing claims under the
U.S. and New Jersey Constitutions as well as various tort claims
under state law.

Defendants moved for dismissal under Fed. R. Civ. P.
12(b)(6), or alternatively for summary judgment under Fed. R.
Civ. P. 56(b), on the state tort claims because Plaintiff failed
to file a notice of claim within 90 days of his injury, as
required under the New Jersey Tort Claims Act ("NJTCA"),
N.J.S.A. 59:1-1 et seq. [Docket Item 9.] Plaintiff admits that a
notice of claim was not filed, but he and his mother filed a
complaint with the Camden County Police's internal affairs
office shortly after the incident, which he argues effectively
placed Defendants on notice of their potential liability.
Because the Court holds that under New Jersey law such a
complaint does not "substantially comply" with the notice
requirement under the NJTCA, Defendants' motion will be granted,
and the state tort claims will be dismissed. The Court finds as
follows:[1]

_____

[1] The facts are taken from Plaintiffs' Complaint and from
undisputedly authentic documents upon which Plaintiff explicitly
relies in his Complaint. See In re Rockefeller Ctr. Props.,
Inc., Sec. Litig., 184 F.3d 280, 287 (3d Cir. 1999). Because
Plaintiff's Complaint contains state tort claims subject to the
notice requirement under the New Jersey Tort Claims Act, and
Plaintiff asserts that he substantially complied with the notice
requirement, the documents related to these matters submitted by

2

1.     Plaintiff's Complaint alleges that he was walking home after a game of basketball on or around 9:00 p.m. on the evening of September 27, 2013, when he was stopped by a police car with several police officers inside, three of whom Plaintiff identified as Defendants William Frett, Nicholas Rao, and Anthony Amato. (Compl. ¶¶ 1-2, 7, 11.) The encounter began with questions from Defendant Frett but escalated quickly. According to the Complaint, the officers, allegedly without any provocation, threw Plaintiff to the ground and assaulted him with punches and kicks until Plaintiff's family members came onto the scene. (Id. ¶¶ 9-13.) Plaintiff was arrested and charged with resisting arrest, aggravated assault, obstruction of justice, and eluding an officer of the law but was later exonerated by a jury. As a consequence of the incident, Plaintiff suffered "severe bodily injuries," emotional distress, and pain and suffering. (Id. ¶¶ 15-17.)

2.     Shortly after the incident, Plaintiff's mother, Malika Macklin, filed a complaint with the Internal Affairs department

---

both Plaintiff and Defendants will be considered in connection with the pending motions to dismiss. See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."). Neither party raises an objection to the Court's reliance on these documents to decide the pending motion. For purposes of these motions, the Court accepts Plaintiff's allegations as true.

at the Camden County Police Department, which was memorialized in a "Reportable Incident Form" with the date of October 1, 2013. (See Ex. A to Def. Reply [Docket Item 13-1]; see also Cert. of Malika Macklin [Docket Item 12] ¶ 8.) Ms. Macklin complained that her son was arrested by police officers after they received a report of a person with a gun, and that officers "jacked" him up. She stated that when she came outside, her son was "on a gurney being attended to by medical personnel," and complained to Internal Affairs that her son "was 'targeted' and mistreated physically." (Ex. A to Def. Reply.) Plaintiff also reported the excessive force incident to Officer Angel Nieves, a detective in the Office of Internal Affairs, and signed a citizen complaint form on October 15, 2013. (See Cert. of Malik Macklin [Docket Item 12] ¶ 13; Ex. C to Def. Reply [Docket Item 13-1].) At Plaintiffs' criminal trial, Officer Nieves confirmed that he investigated the complaint of excessive force by Plaintiff and his mother but ultimately concluded that no excessive force was used. (See Ex. C to Pl. Br. [Docket Item 12] Tr. at 61:11-25.)

3.    This Complaint was filed in the Superior Court of New Jersey in Camden County approximately two years after the incident, in September 2015, and was removed to this Court

shortly thereafter.[2] Plaintiff asserts claims for excessive force and negligent hiring and training under the United States and New Jersey Constitutions (Compl. Counts One, Two, and Four), as well as common law tort claims for assault, negligence, and abuse of process. (Id. Counts One, Three and Five.)

4.    When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the nonmoving party. A motion to dismiss may be granted only if a court concludes that the plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests that make such a claim plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

5.    Although the court must accept as true all well-pleaded factual allegations, it may disregard any legal conclusions in the complaint. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). "If the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

---

[2] The Court has subject matter jurisdiction over Plaintiff's 42 U.S.C. § 1983 claims and state law claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

complaint has alleged – but it has not shown – that the pleader
is entitled to relief." Iqbal, 556 U.S. at 679 (internal
quotation marks and citation omitted).

6.    In its partial motion to dismiss under Fed. R. Civ. P.
12(b)(6) or alternatively for summary judgment, Defendants seek
to dismiss Plaintiff's asserted state law claims for assault,
negligence, and abuse of process for failure to comply with the
notice requirement under the New Jersey Tort Claims Act
("NJTCA").[3]

7.    Under the NJTCA, "parties suing public entities must
comply with strict requirements for notifying and suing those
entities." Feinberg v. State, D.E.P., 644 A.2d 593, 597 (N.J.
1994). The NJTCA bars suit against a government agency or
employee unless the party seeking to bring the action has
presented those claims "in accordance with the procedure set
forth in this chapter." N.J.S.A. 59:8-3. The NJTCA is specific

_____

[3] The remaining claims, asserted under the United States and New
Jersey Constitutions, and are not at issue here. (See Compl.
Counts One, Two, and Four.) Compliance with the NJTCA's notice
requirements is not required for Plaintiff's federal or state
constitutional claims. (Pl. Br. at 3.) See Cty. Concrete Corp.
v. Town of Roxbury, 442 F.3d 159, 174 (3d Cir. 2006) ("It is
true that the NJTCA's notice requirements do not apply to
federal claims, including § 1983 actions, or to state
constitutional torts." (internal citations omitted)); see also
Owens v. Feigin, 947 A.2d 653, 654 (N.J. 2008) (holding that
notice requirement does not apply to claims under the New Jersey
Civil Rights Act). Thus, the only claims in this case subject to
dismissal for failure to file a notice of claim are the state
tort claims.

about the information that must be included in a notice of claim
and how it must be presented to the public entity. The claim
notice must include, among other things, (1) the name and
address of the claimant; (2) the address for sending
communication about the claim (2) the "date, place, and other
circumstances of the occurrence" which gave rise to the claim;
(3) a "general description of the injury, damage, or loss
incurred so far as it may be known at the time"; (4) the name of
the public entity, employee, or employees causing the injury;
and (5) the amount claimed as of the date of presentation of the
claim, "including the estimated amount of any prospective
injury, damage or loss, insofar as it may be known at the time
of the presentation of the claim, together with the basis of
computation of the amount claimed." N.J.S.A. 59:8-4. In
addition, "the notice is triggered by the occurrence of the
injury," Beauchamp v. Amedio, 751 A.2d 1047, 1053 (N.J. 2000),
and must be filed with the public entity within ninety (90) days
of the claim's accrual, or the plaintiff is barred from
recovering damages. See N.J.S.A. 59:8-8.

8.   These specific notice requirements are meant to
achieve several goals. They allow the public entity time to
review the claim and to promptly investigate the facts and
prepare a defense while the incident is fresh; provide the
entity with an opportunity to settle meritorious claims before a

7

lawsuit is filed; afford them an opportunity to correct the
conditions which gave rise to the claim; and "inform the State
in advance as to the expected liability or indebtedness that it
may be expected to meet." Velez v. City of Jersey City, 850 A.2d
1238, 1242 (N.J. 2004) (quoting Beauchamp, 751 A.2d at 1053).

     9.   It is undisputed that Plaintiff did not file a notice
of claim with the Camden County Police Department prior to
filing this Complaint. Plaintiff and his mother did, however,
make written and oral complaints with the Internal Affairs
Office about the use of excessive force, which was investigated
by Officer Nieves. The question for the Court is whether those
complaints substantially complied with the NJTCA's notice
requirement. The Court holds that they did not.

     10.   The equitable doctrine of substantial compliance
prevents the barring of legitimate claims due to technical
defects. Lebron v. Sanchez, 970 A.2d 399, 406 (N.J. Super. Ct.
App. Div. 2009); Henderson v. Herman 862 A.2d 1217 (N.J. Super.
Ct. App. Div. 2004). The doctrine provides that technical notice
defects will not defeat a valid claim as long as the notice that
given "substantially satisfies the purposes for which notices of
claims are required." Lebron, 970 A.2d at 405-06 (quoting
Lameiro v. W. N.Y. Bd. of Educ., 347 A.2d 377, 379 (N.J. Super.
Ct. Law Div. 1975)); see also Johnson v. Does, 950 F. Supp. 632,
635 (D.N.J. 1997). "Although the doctrine of substantial

compliance has occasionally been applied in the tort claims context, it has been limited carefully to those situations in which notice, although both timely and in writing, had technical deficiencies that did not deprive the public entity of the effective notice contemplated by the statute." D.D. v. Univ. of Med. & Dentistry of N.J., 61 A.3d 906, 923 (2013).

11.  As an initial matter, the Court rejects Defendant's argument that Plaintiffs' complaint to the Camden Police Department fails to substantially comply with the notice requirement as a matter of law because it was not in writing. (See Def. Reply Br. [Docket Item 13] at 3-4 (citing Velez v. City of Jersey City, 817 A.2d 409, 417 (N.J. Super. Ct. App. Div. 2003) and Meale v. City of Egg Harbor City, No. 14-5860, 2015 WL 3866222, at *6 (D.N.J. June 23, 2015)).) Reading Plaintiffs' allegations liberally, it is apparent that Plaintiff's and his mother's complaints both resulted in a written statement to Internal Affairs. Plaintiff certified that he gave a statement to Officer Nieves, and the statement "recorded" the physical injuries he sustained as a result of the alleged "beating." (Ex. A to Pl. Br. ¶ 15.) He also asserted that he signed a complaint form but "was not given a copy of the statement" or the form that he signed. (Id. ¶ 16.) Likewise, in her written certification, Ms. Macklin confirmed that her son made "written and oral complaints to Internal Affairs in October

9

2013." (Ex. B to Pl. Br. ¶ 9.) According to the document Defendants themselves produced, Ms. Macklin's own complaint to the Camden County Police Department was also recorded in writing. (See Ex. A to Def. Br.) Defendants' argument that Plaintiff gave only an oral statement is thus unpersuasive.

12.   Plaintiff argues that the complaints that he and his mother lodged with Internal Affairs substantially complied with the NJTCA's notice requirement because they informed the Camden County Police Department of the specifics of the incident and alleged misconduct within a 90-day period. While the Court does not have a copy of Plaintiff's written statement, Plaintiff's certification states that, in his complaint to Internal Affairs, Plaintiff "described the incident and the excessive use of force upon me by the officers involved in my September 27, 2013 arrest." He also noted the physical injuries that he suffered. (Ex. A to Pl. Br. ¶ 15.) Ms. Macklin likewise certified that her son's complaints to Internal Affairs contained "detailed accounts of the brutal use of force on September 27, 2013 and the injuries sustained." (Ex. B to Pl. Br. ¶ 9.) Moreover, based on the information given to him, Officer Nieves was able to conduct an investigation into Defendants' alleged misconduct. (See Ex. C to Pl. Br.) Finally, the signed complaint forms Defendants attached show that Plaintiff and his mother reported the alleged misconduct to the Camden Police Department sometime

10

in October of 2013, well within 90 days of Plaintiff's injury.
(See Exs. A & C to Def. Br.; see also Ex. A to Pl. Br. ¶ 13; Ex.
B to Pl. Br. ¶ 8 (noting that Plaintiff reported the incident
shortly after his release from jail in October 2013).) Viewing
these facts in light most favorable to Plaintiff, Plaintiff's
written report appeared to give a sufficiently detailed account
of the "who, what, when, and where" of the incident upon which
his assault claim is based.

        13.   Notwithstanding the specificity of Plaintiff's report,
which the Court does not dispute, the Court finds that the
written complaint to Internal Affairs did not substantially
comply with the NJTCA's notice requirements, because it failed
to give notice of a potential civil suit for damages against the
police department and the amount of damages claimed. As noted
above, the purpose behind the notice of claim requirement is not
only to allow the public entity time to investigate the facts
and correct the conditions which gave rise to the claim, but to
communicate a party's intention of filing a civil action so that
the entity may prepare appropriately by, for example, examining
its expected liabilities and indebtedness, preparing a defense,
preserving evidence, and foreclosing the possibility of suit by
settling meritorious claims. See Beauchamp v. Amedio, 751 A.2d
1047, 1052-53 (N.J. 2000) (explaining that notice of claim
requirement serves particular goals, including providing the

11

public entity with an adequate opportunity "to settle
meritorious claims prior to the bringing of suit," to
"investigate the facts and prepare a defense," and to "inform
the state in advance as to the indebtedness or liability that it
may be expected to meet." (internal quotations and citations
omitted)).

     14.  In this case, the complaint to Internal Affairs was
simply a request for the police department to look into an
alleged incident of wrongdoing. The "Citizen Complaint
Information Form," which explains the potential outcomes of
filing an Internal Affairs complaint and which Plaintiff signed
after making his report, makes no mention of civil liability:

   ▪ If our investigation reveals that a crime might have
     been committed, the county prosecutor will be
     notified. You might be asked to testify in court.
   ▪ If our investigation results in an officer being
     charged with a violation of department rules, you
     might be asked to testify in a department hearing.
   ▪ If our investigation reveals that the complaint is
     unfounded or that the officer acted properly, the
     matter will be closed.

(Ex. C to Def. Br.) As the above illustrates, and as Plaintiff
would have understood it, the filing of a complaint with the
Internal Affairs Office would expose the officers involved to
internal disciplinary measures or criminal liability, but not to
money damages. Not every civilian complaint to a police
department alleging an incident of police misconduct results in
the filing of a lawsuit, and Defendant is not required to

interpret Plaintiff's request to investigate an incident as an indication of future litigation to come.

15.   This Court was faced with a similar set of facts in Ingram v. Twp. of Deptford, 911 F. Supp. 2d 289, 295 (D.N.J. 2012). In that case, the plaintiff alleged that a police officer used excessive force in removing her from a municipal court proceeding, and registered her complaint against the officer by describing the incident in detail in a municipal court complaint form which she filled out the same day. 911 F. Supp. 2d 291. The Court held that the plaintiff's written complaint did not substantially comply with the notice of claim requirement. In addition to the fact that the complaint had not been filed with the appropriate entity being sued – the police department – the Court noted that Plaintiff's statement "contained neither an amount of damages claimed – as required by [N.J.S.A.] § 59:8-4(f), nor any language suggesting that Plaintiff sought civil damages for her injuries." Id. at 295. Because Plaintiff's complaint was nothing more than "what it plainly purports to be: a statement in support of possible criminal charges" against the defendant, it did not constitute substantial compliance with the notice requirements of the NJTCA. Id. Platt v. Gonzalez, No. 09-6136, 2011 WL 2413264, at *4 (D.N.J. June 9, 2011).

16.   At least two other courts in this district have come to a similar conclusion. In Meale v. City of Egg Harbor City,

13

No. 14-5860, 2015 WL 3866222, at (D.N.J. June 23, 2015), the plaintiff complained to the prosecutor's office that she had repeatedly been sexually assaulted by a police officer after she agreed to act as a confidential informant for him. Based on plaintiff's statements, the prosecutor's office investigated the plaintiff's allegations and criminally charged the officer with official misconduct. 2015 WL 3866222, at *1. Even though the plaintiff's complaint spawned an investigation, the district court held that it did not substantially comply with the NJTCA's notice of claim requirements, because it did not sufficiently put the police department and the city on notice of a potential civil suit. 2015 WL 3866222, at *5-6. Most notably, in Platt v. Gonzalez, No. 09-6136, 2011 2413264, at *4 (D.N.J. June 9, 2011), another court in this district concluded that a plaintiff's Internal Affairs complaint with the police department describing misconduct by the defendant police officers did not substantially comply with the requirements of the NJTCA. A complaint filed with Internal Affairs, explained the court, was not merely the "case of an attempted [NJTCA] notice with a technical flaw," and therefore "could not be considered a notice pursuant to the [NJTCA]." Id.

17.   The same reasoning applies here. Although Plaintiff's report to Internal Affairs certainly made Defendants aware of potential misbehavior, there are no particular facts that would

14

make it reasonable to conclude that Defendants were on notice of
a potential civil suit for money damages. For example, although
Plaintiff described the incident and his injury, he did not
appear to indicate "the estimated amount of any prospective
injury, damage or loss, . . . together with the basis of
computation of the amount claimed," as required in a traditional
claim notice. N.J.S.A. 59:8-4. Nor is there any allegation that
the complaint was made with the assistance of an attorney.
Plaintiff's Internal Affairs complaint did not serve the purpose
of a notice of claim – to alert a public entity of the
possibility of damages so that they may have an opportunity to
address a monetary demand for damages and prepare and plan for a
civil suit.[4] Accordingly, the Court will grant Defendant's motion
to dismiss the state law claims.[5]

---

[4] Indeed, if the Court were to hold otherwise – that a typical
civilian complaint like Plaintiff's substantially complies with
the NJTCA's notice requirements – the detailed and specific
provisions of N.J.S.A. 59:8-4-8 describing the filing of a
formal notice of claim would be rendered meaningless.

[5] According to the certifications by Plaintiff and his mother,
the complaints to Internal Affairs concerned only an allegation
of excessive force. (See Ex. A to Pl. Br.) There is no
suggestion from either the Complaint or Plaintiff's submissions
that Macklin or his mother raised an abuse of process claim with
Internal Affairs, or that such a claim was ever investigated by
Officer Nieves. Thus, the abuse of process claim must separately
be dismissed because no notice, constructive or otherwise, was
ever filed. See Cty. Concrete Corp. v. Town of Roxbury, 442 F.3d
159, 174 (3d Cir. 2006) (dismissing tortious interference with
contract claim and civil conspiracy claim because alleged notice
made no mention of those claims); Wunschel v. City of Jersey
City, 477 A.2d 329, 338 (N.J. 1984) (holding that claimant had

18.   Defendant also seeks to dismiss any and all claims against the County of Camden because Camden County may not be held liable for the police officers' actions under the theory of respondeat superior. (See Def. Br. at 7-8.) Defendant is correct that in civil rights actions, municipalities and government officials are not liable for the unconstitutional conduct of employees under the doctrine of respondeat superior. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior."). Thus, to the extent Plaintiff seeks to hold Camden County or Police Chief John Scott Thomson vicariously responsible for the constitutional torts of their subordinates, those claims will be dismissed.

19.   A municipality or policymaker defendant may, however, be held liable if the defendant, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Detention Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (internal quotations and citation omitted); see also Mulholland v. Gov't Cty. of Berks,

not substantially complied with the notice of claim requirement by filing workers' compensation petition because the petition failed to give notice of an intention to sue for tort of wrongful death).

Pa., 706 F. 3d 227, 237 (3d Cir. 2013) (noting that municipality
"'can be held responsible as an entity when the injury inflicted
is permitted under its adopted policy or custom.'" (quoting Beck
v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996))). A
policymaker defendant may also be held responsible "if he or she
participated in violating the plaintiff's rights, directed
others to violate them, or, as the person in charge, had
knowledge of and acquiesced in his subordinates' violations."
A.M. ex rel. J.M.K., 372 F.3d at 586; see also Argueta v.
Immigration and Customs Enforcement, 643 F.3d 60, 71 (3d Cir.
2011).

20.   In Count Two of the Complaint, Plaintiff alleges that
Defendants Camden County and Police Chief Thomson "developed and
maintained policies or customs exhibiting deliberate
indifference to the constitutional rights of persons in the
County of Camden . . . which caused Plaintiff, Malik Y.
Macklin's, rights to be violated." (Compl. Count Two, ¶ 3.)
Specifically, Plaintiff asserts that Defendants "inadequately
and improperly investigate[d] citizen complaint and police
misconduct," "inadequately supervise[d] and train[ed] its police
officers," and "did not require appropriate in-service training
or retraining of officers who were known to have engaged in
police misconduct." (Id. ¶ 4.) As a consequence, Plaintiff
asserts that the individual police officers who engaged in the

alleged misconduct "believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated." (Id. ¶ 5.)

21.  The Court reads these allegations against the County of Camden and Police Chief Thomson as independent claims for liability separate from claims under the theory of respondeat superior. Because Defendants have only sought the dismissal of the claims based in respondeat superior, the question of whether the Complaint states plausible claims for relief for failure to train and failure to supervise is left for another day. In the meantime, Camden County and Police Chief Thomson will remain as defendants in this action as to the constitutional claims.

22.  Although Defendants have not moved to dismiss the Camden County Police Department as a party, the Court notes that "[i]n Section 1983 actions, police departments cannot be sued in conjunction with municipalities, because the police department is merely an administrative arm of the local municipality, and is not a separate judicial entity." Padilla v. Twp. of Cherry Hill, 110 Fed. App'x 272, 278 (3d Cir. 2004) (quoting DeBellis v. Kulp, 166 F. Supp. 2d 255, 264 (E.D. Pa. 2001)). If all counsel agree, they are invited to submit a consent order dismissing the Camden County Police Department as a party. See also Evans v. City of Newark, No. 14-120, 2016 WL 2742862, at *9

18

(D.N.J. May 10, 2016) (dismissing New Jersey State Police
because it is "indisputably" an agency of the State, not
amenable to suit under § 1983).

23.   The only remaining defendants in this case are unnamed
John Doe police officers. (See Compl.) There is nothing before
the Court or on the docket to suggest that Plaintiff has
identified and named these individuals, and it follows that
there is no indication that they were ever served with the
Complaint or Amended Complaint. The time for service under Fed.
R. Civ. P. 4(m) has long expired,[6] and Plaintiff has neither
moved to extend time for service nor demonstrated good cause for
his noncompliance. See McCurdy v. Am. Bd. of Plastic Surgery,
157 F.3d 191, 196 (3d Cir. 1998). Moreover, the Court does not
have the ability to direct service on these unnamed Defendants
because Plaintiff has failed to specifically identify them and
has not moved for discovery to uncover their names. Accordingly,
the Court will exercise its discretion and dismiss these
defendants. See, e.g., Catlett v. N.J. State Police, No. 12-153,
2015 WL 9272877, at *6 (D.N.J. Dec. 18, 2015) (Simandle, J.)
(dismissing John Doe defendants because plaintiff neither served
nor sought discovery on the identity of the individuals within
the time limit of Fed. R. Civ. P. 4(m)); Mote v. Murtin, No. 07-

---

[6] Plaintiff's Complaint was filed on October 21, 2015. The 90-day
period of Rule 4(m), Fed. R. Civ. P., expired January 19, 2016.

1571, 2008 WL 2761896, at *5-6 (M.D. Pa. July 11, 2008)
(dismissing John Doe defendants because plaintiff has made no
showing of good cause for failing to effectuate service within
specific time limit).

24.  For the reasons stated above, the Court will grant
Defendant's motion to dismiss the state tort claims with
prejudice. Defendants Camden County Police Department and John
Does 1-10 will also be dismissed from the case. An accompanying
order will be entered.


**June 28, 2016**                       **s/ Jerome B. Simandle**
Date                                    JEROME B. SIMANDLE
                                        Chief U.S. District Judge